**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE ESTHER LOUISE GILMOUR, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 1:13-cv-00553-BAM <br><br> ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

## I.    INTRODUCTION

Plaintiff Rosie Esther Louise Gilmour ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under Title II and Supplemental Security Income payments under Title XVI of the Social Security Act.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.

Having carefully considered the parties' arguments, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, the Court affirms the Commissioner's determination.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1

## II. BACKGROUND

### A. Overview of Administrative Proceedings

On January 20 and January 28, 2010, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging disability beginning October 16, 2009. AR 75-76, 127, 131. Plaintiff alleged disability due to "left foot, nerve problems." AR 170. Plaintiff's application was denied initially and on reconsideration. AR 77-81, 87-91. Subsequently, Plaintiff requested a hearing before an ALJ. AR 92-93. In a decision dated December 9, 2011, the ALJ found Plaintiff could not perform past relevant work but retained the residual functional capacity to perform jobs existing in significant numbers in the national economy; therefore, Plaintiff was not disabled. AR 26-27. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on February 22, 2013. AR 1-5. Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g) and 1383(c).

### B. Medical Record

Plaintiff's attorney stated that Plaintiff had surgery on her left foot in 1996, 2009, and 2011. AR 36. The ALJ noted that Plaintiff did not produce a record of her surgery in 2009. AR 24, 239. Plaintiff underwent a subsequent left foot surgery on April 8, 2011. AR 508. On April 21, 2011, she was admitted to the hospital for a possible foot infection. AR 508-09. On April 22, 2011, treatment records noted Plaintiff's pain was controlled and her vitals were okay. AR 516. The following day, her leg was noted to "look good," she had no cellulitis, her vitals were good, her pain was a 6 out of 10 before her medication, and she was "overall stable." AR 516. On April 25, 2011, Plaintiff's blood culture was negative and her deep venous system was normal. AR 508-09. Plaintiff was noted to be doing reasonably well following her surgery, her outpatient therapy was proceeding without any problems, and her condition had improved. AR 509. Plaintiff reported that she takes Vicodin for pain but it is not effective in relieving her pain. AR 52.

### C. Plaintiff's Background and Testimony

Plaintiff was born on March 20, 1959 and was 52 years old at the time of her hearing before the ALJ. AR 37. Prior to the alleged disability, Plaintiff worked as a certified nursing assistant, supermarket cashier, and waitress. AR 59. Plaintiff alleged severe impairments from residual left foot pain after three surgeries. AR 36. Plaintiff has vocational training as a certified nursing

assistant. AR 48. Plaintiff testified she worked as a certified nursing assistant in Arizona in 2008 but her certification lapsed in December 2010. AR 43-44. At this job, Plaintiff lifted patients with help from another individual. AR 44. Plaintiff left the job when she moved back to California. *Id.* Plaintiff testified she subsequently held a part-time job as a caregiver for six months ending January 8, 2011, working 30 hours per week. AR 38-39. Her work as caregiver required Plaintiff to lift her patient—a 62-year-old male—with the help of another individual. AR 39. Plaintiff testified she had difficulty performing this job and she performed the job with the help of another caregiver. AR 48-49. Plaintiff's work as caregiver ceased due to the death of her patient. AR 40. Plaintiff then began looking for other work but failed to find a job. *Id.* At the time of the hearing before the ALJ, she was still recovering from her last surgery in April 2011. AR 49.

Plaintiff testified she cannot work because of ongoing pain in her foot which prevents her from doing much standing, sitting, or lifting. AR 45. She also indicated there may be another surgery in the near future. AR 49-50. Plaintiff reported pain when sitting and stated that she uses crutches all the time and can only stand comfortably for five minutes. AR 50-51. Plaintiff said that, on a scale from one to ten, her average pain is a six; when she takes medication, her pain is a five out of ten. AR 52.

**D.    Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at Plaintiff's hearing before the ALJ on November 9, 2011. AR 58-68. The VE classified Plaintiff's past relevant work as a medium, semi-skilled position of a certified nursing aid; light, unskilled position of a cashier; and light, semi-skilled position of a waitress. AR 58-59. The ALJ asked the VE to consider a hypothetical individual of the same age, education and past work as Plaintiff, who could lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 out of 8 hours for an hour at a time; sit for 6 out of 8 hours with the opportunity to reposition herself after 30 minutes; could not operate foot controls with the left lower extremity; occasionally balance, stoop, kneel, crouch, and climb stairs; never crawl or climb ladders, ropes or scaffolds; and should avoid concentrated exposure to hazardous machinery and unprotected heights. AR 60-62. The VE testified that this individual could not do Plaintiff's past work, which included the position of supermarket cashier. AR 62-63. However, the vocational expert testified that this individual could perform some other cashiering jobs which allowed the

opportunity to sit. AR 63. The ALJ asked the VE to provide an example, and she identified the position of parking lot cashier, where there is a stool for the employee to sit, and the employee can sit and stand, and sit for more than five minutes an hour. *Id.* The VE testified that this constituted approximately 10 percent of the cashiering jobs which amounted to approximately 4,000 jobs locally and 150,000 jobs nationally. *Id.* The VE confirmed the position (Dictionary of Occupational Titles (DOT) code 211.462.010) was light and unskilled. AR 64.

The VE further testified that this individual would have transferable skills from her prior work as a certified nursing aid to jobs such as the light, semi-skilled position of a companion (DOT code 309.677-010), and the light, semi-skilled position of a personal attendant (DOT code 309.674-014). AR 64-65. The VE reported there were approximately 13,000 such positions locally and about 300,000 positions nationally. AR 65. The VE confirmed this individual could also work in the light, unskilled position of an officer helper (DOT code 239.567-010) with approximately 8,000 positions available locally and 100,000 positions nationally. AR 65.

The ALJ asked the VE if her testimony was consistent with the definitions in the DOT, and the VE affirmed that it was. AR 66. The VE also stated that her testimony was not modified by her own experience. AR 66. When asked by Plaintiff's attorney whether there were any sedentary jobs available to the hypothetical individual described by the ALJ, the VE testified the full range of sedentary, unskilled work would be available, even without the transferable skills. AR 67-68.

**E.     The ALJ's Decision**

On December 9, 2011, the ALJ issued a decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act. AR 27. After considering each step in the sequential evaluation, the ALJ made the following findings:

1.     The claimant has not engaged in substantial gainful activity since October 16, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

2.     The claimant has the following severe impairments: status post-surgery to the left foot (20 CFR 404.1520(c) and 416.920(c));

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925 and 416.926);

4

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk up to six of eight hours, but for no more than one hour at a time; can sit for up to six of eight hours, but for no more than 30 minutes at a time; cannot operate foot pedals with his left lower extremity; can no more than occasionally climb ramps or stairs, balance, stoop, kneel, or crouch; can never crawl or climb ladders or ropes; and can tolerate no more than concentrated exposure to dangerous machines or unprotected heights;

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

6. The claimant was born on March 20, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

7. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968);

8. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d));

9. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

### III.     DISCUSSION

On April 16, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. On appeal, Plaintiff contends: 1) the ALJ failed to provide legally sufficient reasons to reject Plaintiff's testimony; and 2) the ALJ erred in finding Plaintiff could perform alternative work at step five.

**A.     Standard of Review**

To be disabled, a claimant must have a severe medical impairment capable of lasting at least twelve months, such that in light of his medical and vocational limitations he cannot engage in either his past work or in any work existing in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3). The claimant will be found disabled if he either satisfies all the elements of this

definition or has a medical condition which is defined as disabling under the Commissioner's "listings." *See* 20 C.F.R. 404.1520. The Commissioner prescribes the order in which the ALJ considers these factors, and instructs the ALJ to end his inquiry as soon as he reaches a dispositive finding, either in that the claimant fails to satisfy an element of disability or in that he satisfies a listing. This sequential process is intended to help ensure that determinations are uniform, administratively efficient, neutral, and carefully documented. 20 C.F.R. 404.1594(b)(5); *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999) (sequential process embodies "presumptions about disabilities, job availability, and their interrelation" which "grow out of the need to administer a large benefits system efficiently").

Congress has provided a limited scope of judicial review of the Commissioner's finding that a claimant is not disabled. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

**B.     The ALJ Provided Legally Sufficient Reasons for Rejecting Plaintiff's Testimony**

Plaintiff argues that the ALJ provided legally insufficient reasons for rejecting her subjective complaints. The Commissioner maintains that the ALJ provided valid reasons for finding Plaintiff not fully credible and the reasons are supported by substantial evidence in the record.

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms

1
2
3
4
5
6
7
8
9
10

alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

11
12
13
14
15

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

16

    **2.**    **Analysis**

17
18
19
20
21

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 24. Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

22
23
24
25
26
27
28

First, the ALJ found the objective medical evidence in the record did not support Plaintiff's subjective complaints. AR 24-25. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d at 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ noted Plaintiff's surgery in April of 2011 and her ongoing normal recovery—verified several times in the administrative record – mitigated against her subjective complaints. AR 24-25, 509, 513, 516, 519.

The record shows no treatment after May 24, 2011 when Plaintiff said she was doing better, and all notes indicated a normal recovery. AR 519. The ALJ emphasized that Plaintiff underwent only one foot surgery in the past 15 years—the April 2011 surgery from which Plaintiff was still recovering at the time of the hearing. AR 25, 49. The ALJ considered Plaintiff's treatment record to be "benign" and incompatible with her allegations of total disability. AR 25. Therefore, the ALJ properly considered the medical evidence as one factor weighing against Plaintiff's subjective complaints.

Second, the ALJ determined that Plaintiff's work as a caregiver during the period of her alleged disability contradicted her subjective complaints. AR 26. Engaging in work during a period of alleged disability does not automatically discount the possibility of true disability, but such a consideration is proper evidence for an ALJ to consider in making a credibility determination. *See Tommasetti*, 533 F.3d at 1040; *Thomas v. Astrue*, No. 1:11cv01291 SKO, 2013 WL 204745, at *15-16 (E.D.Cal. Jan. 17, 2013); 20 C.F.R. § 404.1571. When an ALJ discounts a plaintiff's subjective complaints based on work performed during a period of alleged disability, the ALJ must explain how the work indicates plaintiff is less limited than alleged.

Here, the ALJ explained that Plaintiff worked thirty hours a week for a six month period, until nearly sixteen months after the onset of her alleged disability. AR 26, 38-40. Plaintiff stopped work when her patient died, not because her disability prevented her from functioning as a caretaker. AR 40. Plaintiff even continued to look for work after her patient died, but failed to find new work. *Id.* Furthermore, the ALJ explained the work Plaintiff performed as a care giver contradicted her alleged limitations. For example, Plaintiff was required to (with the assistance of another) lift another person's body. AR 39. Thus, the ALJ found Plaintiff's work as a caregiver mitigated against her subjective complaints.

Finally, the ALJ found Plaintiff's daily activities weighed against her credibility. AR 25. An adverse credibility determination based on a plaintiff's daily activities may rest on two grounds: the activities must be inconsistent with a plaintiff's claimed limitations or they must involve "the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). If an ALJ discredits a plaintiff's subjective complaints due to daily activities, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability" to the workplace. *Id.* "[T]he mere fact that a plaintiff has carried on certain daily

8

activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (the plaintiff's activities of shopping with assistance, walking for approximately one hour, getting together with friends, playing cards, swimming, watching television and reading did not consume a substantial part of her day, nor did the activities indicate physical functions transferable to a workplace).

Here, the ALJ mentioned Plaintiff engages in the following activities of daily living: she 1) leaves her home three to seven times daily; 2) attends church once per week; 3) goes out for lunch on most days; 4) cooks for herself; 5) does household chores (including cleaning the bathroom and kitchen). AR 25. The ALJ concluded that this "broad range of daily activities is not consistent with a finding of disability." AR 25.

Plaintiff's activities of daily living, as advanced by the ALJ, do not constitute a specific and legitimate reason to reject Plaintiff's subjective symptom testimony. The ALJ failed to relate Plaintiff's daily activities to her claimed limitations or their transferability to the workplace. Such cursory analysis is insufficient to constitute a clear and convincing reason. *See, Orn,* 495 F.3d at 640. However, because the ALJ provided other specific and legitimate reasons to discount Plaintiff's subjective symptom testimony, the ALJ's error was harmless. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (ALJ's error concerning two invalid reasons given in support of an adverse credibility finding deemed harmless when remaining valid reasons sustain the ultimate credibility determination).

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**C.  The ALJ Properly Considered Plaintiff's Capacity for Alternative Work**

Plaintiff argues that the ALJ erred in identifying alternative work at step five of the sequential disability analysis. Specifically, Plaintiff argues that the ALJ concluded Plaintiff requires a stand/sit option. The jobs identified by the VE, Plaintiff argues, do not allow for a stand/sit option

9

according to the DOT. Plaintiff concludes that because the VE did not explain such a deviation, the VE's opinion that Plaintiff could perform such jobs is not substantial evidence. The Commissioner responds that no conflict existed between the VE's testimony and the DOT, and the ALJ properly relied on the VE's testimony regarding jobs available in significant numbers in the national economy that Plaintiff could perform.

### 1.     Legal Standard

At step five of the sequential evaluation, the ALJ has the burden to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs within the claimant's residual functional capacity. Social Security Ruling 83-12, 1983 SSR LEXIS 32; *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *Johnson*, 60 F.3d at 1435; *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons for any conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p, 2000 SSR LEXIS 8). When a vocational expert provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between the vocational expert's evidence and information provided in the DOT. In these situations, the adjudicator will:

> • Ask the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and
>
> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 SSR LEXIS 8. In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks and citation omitted). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict—even where the vocational expert did not identify the conflict—the ALJ errs. *See Hernandez v. Astrue*, No. CV 10-

3142, 2011 U.S. Dist. LEXIS 6377, 2011 WL 223595, at *2-5 (C.D. Cal. 2011) (where vocational expert incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on vocational expert's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 U.S. Dist. LEXIS 42224, 2010 WL 1752162 at *3 (C.D. Cal. 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

### 2. Analysis

The Court is not persuaded by Plaintiff's arguments for two reasons. First, Plaintiff is mistaken that a stand/sit option conflicts with the relevant jobs as described by the DOT. The DOT does not discuss the impact of a sit/stand option, and the Ninth Circuit has not considered whether a sit/stand option creates a conflict with any of the occupations in the DOT. Thus, it was appropriate for the ALJ to rely on the VE's expertise in knowing which jobs would be precluded by a stand/sit option.

Regardless, the Ninth Circuit has found procedural errors at this stage may be harmless if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154 n.19; *Hirschy v. Comm'r of Soc. Sec.*, 2012 WL 996527, *11 (E.D. Cal. Mar. 23, 2012) (ALJ's error in not questioning the VE on whether a conflict existed with the DOT deemed harmless since the VE addressed the sit/stand option and eroded available jobs accordingly).

Here, the administrative record demonstrates the VE considered the effect of a stand/sit option at Step Five. Indeed, Plaintiff's limitation to a sit/stand option figured prominently in the VE's testimony and in the ALJ's decision. AR 26-27, 62-65. The VE acknowledged Plaintiff could not work in her prior capacity as supermarket cashier due to her need to alternate sitting and standing, but concluded that Plaintiff could work as a parking lot cashier because of her ability to change positions. *Id.* The VE then reduced the number of available cashier jobs by ninety percent to account for Plaintiff's sit/stand limitation, noting 4,000 local jobs and 150,000 national jobs. AR 63. The VE also identified two other jobs Plaintiff could hold despite her limitations: personal attendant (13,000 local and 300,000 national jobs) and office helper (8,000 local and 300,000 national jobs).

11

AR 60-65.Thus, even if the VE's statement that her testimony did not conflict with the DOT was in error, such error was harmless. *See Hixon v. Astrue*, 2012 WL 2501069, *6 (E.D. Cal. June 27, 2012) (VE's testimony accounted for plaintiff's sit/stand limitation and the ALJ properly concluded that the VE's testimony supplemented, rather than conflicted with, the DOT).

### IV.     CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Rosie Esther Louise Gilmour.

IT IS SO ORDERED.

Dated:     **July 29, 2014**              /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE